## Louisville & Nashville Railroad Company v. Commonwealth.

(Decided October 23, 1928.)

### Appeal from Franklin Circuit Court.

1. Railroads.—Noises created by switching cars in railroad yards, shunting of cars upon switches, blowing off of steam, together with bumping of cars and ringing of bells, resulting in disturbing of sleep of nearby residents, held as matter of law not to constitute common nuisance in criminal prosecution against railroad, where it was not shown that noises were unnecessary or could have been avoided.

2. Railroads.—Railroad may regularly operate its trains on its property within city limits either during day or night, without com-

mitting nuisance, so long as the operations are properly carried on and nothing is done which is unreasonable or unnecessary.

WOODWARD, WARFIELD & HOBSON and L. F. JOHNSON for appellant.

WADE HAMPTON WHITLEY, J. W. CAMMACK, Attorney General, and S. H. Brown, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

The Louisville & Nashville Railroad Company was found guilty of a common nuisance in the Franklin circuit court, and fined $200. On this motion for an appeal several grounds for reversal are urged, but, having reached the conclusion that defendant was entitled to a directed verdict in its favor, no other question need be considered.

The main tracks of the company run east and west on Broadway street in the city of Frankfort. At a point opposite the passenger station, switches diverge north across High street, and back of its freight depot, which faces High street several hundred feet from Broadway. It also has switchyards at Cliffside, a short distance east of the city, and at Bellepoint within and near the city's western limits. North and south bound freight destined for Frankfort is carried by trains due in that city at about 10:30 p. m. and 1:30 a. m., respectively. It appears that, in making up trains in the Louisville and Lexington yards, all cars for Frankfort are placed together. Formerly such cars were dropped in the yards at Cliffside and Bellepoint and on the following morning moved from those points over the Broadway tracks and there switched and moved over the switch tracks and placed at the freight depot; all the Broadway switching being done in the daytime. The transportation equipment at Frankfort consists of a yard engine which also does duty in assisting the trains in each direction up the grades from Frankfort. Within the past two years the yards at Cliffside and Bellepoint have not been used for local freight, but instead the switching and placing of cars at the depot have been done by the train crews at night; the reason assigned for this being that in this way the cars are "spotted" at the freight depot in time for the local merchants to receive their freight on the day following the arrival of the cars, and that this could not be successfully accomplished in the old way.

The prosecuting witnesses live along Broadway and High streets in the vicinity of the switchyards. They testify, in substance, that, since this change in switching was made, there has been between the hours of 10 and 11 p. m. and 1 and 3 a. m. a shunting of cars upon the switches, accompanied by the blowing off of steam, bumping of cars, and locking of brakes, together with ringing of bells; that their sleep was disturbed thereby, and they were otherwise greatly annoyed.

It will be noted that all of the matters of which they complain are usual in and incidental to switching operations and it is not shown that any of these arise from improper or negligent operation. True, a few witnesses think that the noises occasioned by ringing bells and popping steam could be eliminated, but they admit that they are not familiar with the operation of trains, and it is evident that the bell should be rung when the train is moving, and it is proven without contradiction that there is no way to avoid the escape of steam in the operation of railway trains. As to the real matters involved, the principal witnesses for the commonwealth state, on cross-examination:

Mr. D. B. Ahler:

"Q. And you don't know that any noises that you heard were unnecessary noises or not? A. I do know that they were noises that disturbed our sleep. As far as they had to do it, they had to do it at that time of night if they would not do it in the day, I want to say that. If that switching was done at night, they may have had noises that were necessary. We people came here to get them to do that switching at other times than at night so that we could rest.

"Q. Didn't you say, or do you say now that you know whether or not the noises that are made there are necessary. A. I said they were necessary if the switching was going on at night.

"Q. It was necessary if the switching was going on at night. A. They try to make it as light as possible, but they can't. They jam in there with those cars.

"Q. You think the switching going on at night is necessary? A. Yes, in a way; I don't see how they can prevent it unless they stop the switching at night."

John Duvall:

"Q. Did you ever work on a railroad? A. No, sir.

"Q. Do you know anything about what is necessary for running a railroad train? A. Well, I don't believe I do.

"Q. You don't know whether the noise made by a railroad is necessary or not? A. I know if they did that switching at Cliffside it would all be avoided. . . . If they do that switching at night, they are bound to make that noise. . . .

"Q. Do you say that if the switching was done at night, that you thought it was necessary to make that noise? A. I said if the switching was done at Cliffside at night . . . or on the other side the noise would be stopped, and that is all we are asking for, for that switching to be stopped at that given point and to be done on the outside of town, where the L. & N. maintains switches, two of them."

In Kilcoyn v. C., St. L. & N. O. R. Co., 141 Ky. 237, 132 S. W. 438, we said:

"The running of heavy trains with heavy engines is necessarily accompanied with noise, smoke and the jarring of the ground. If proof of these things was sufficient to show a negligent operation of trains, then in every case, there might be a recovery after five years. There was no proof that the trains were operated at any greater speed than allowed by law, or that anything required by law in their operation was omitted. The mere fact that the operation of the trains was accompanied by those things which are usually incident to the operation of such trains is no evidence that the trains were negligently operated."

And in L. & N. R. R. Co. v. Com., 158 Ky. 773, 166 S. W. 237, in sustaining a demurrer to an indictment which was more comprehensive than the evidence in this case it was said:

"The operation of a railroad train, and of switchyards, in connection therewith, is a lawful occupation; and the carrying on of its business, and the necessary incidents thereto, when done in a careful and reasonable way and without unnecessary noises, cannot be a nuisance.

"It is a matter of common knowledge that the emission of smoke from engines, and the ringing of bells, the blowing of whistles, and the grinding of wheels are necessary incidents to the operation of railroad trains. A railroad cannot be operated without burning coal, and the coal cannot be burned without making smoke; the ringing of bells and blowing of whistles are not only necessary incidents to the operation of railroad trains, but the giving of signals in that way is actually required by law in many instances; and it is perfectly apparent that the grinding of wheels cannot be avoided in the operation of trains.

"It will be observed that there is no allegation in the indictment that the things complained of were unnecessarily done, or that it was not necessary for the railroad company in the operation of its trains to blow the whistles, to ring the bells, or to cause the emission of large volumes of smoke.

"The necessities of commerce demand the operation of railroads, and railroads cannot be operated without these necessary incidents, and there can be no nuisance in the operation of a railroad or of its switching, unless the noises created thereby are unnecessary in its operation.

"The doing of a lawful thing in a careful and prudent manner cannot be a nuisance; but the doing of a lawful thing in a reckless, careless, or negligent way may be a nuisance. In this case if the ringing of the bells, the blowing of whistles, and the emission of smoke was not done to any greater extent than was necessary in the prudent operation of appellant's trains there was no nuisance, and there being no allegation in the indictment that they were done to any greater extent than was necessary, the demurrer should have been sustained."

See also, L. & N. R. R. Co. v. Com., 10 Ky. Law Rep. 872; and Id., 40 S. W. 913, 19 Ky. Law Rep. 455; C. & O. Ry. v. Scott, 197 Ky. 636, 247 S. W. 735.

Reduced to its last analysis, the gist of the complaint in this case is not the manner of operation, but that no switching should be done within the city limits during the night. This position cannot be maintained. It is shown that the company has legal rights in the streets. It is therefore lawful for it to operate its trains

either during the day or night; and so long as this is properly done and nothing is done which is unreasonable or unnecessary, it is not amendable to the law.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.